**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

**UNITED STATES OF AMERICA**

        **Plaintiff,**

**-v-**

**7046 PARK VISTA ROAD**

        **Defendant.**

**Case No. C-3-02-557**

**Judge Thomas M. Rose**

_____

**ENTRY AND ORDER GRANTING THE UNITED STATES' MOTION
FOR SUMMARY JUDGMENT (Doc. #40) AND GIVING THE UNITED
STATES THIRTY (30) DAYS FROM ENTRY OF THIS ORDER TO
SUBMIT A PROPOSED DECREE OF FORFEITURE**

_____

This is a Complaint for Foreclosure In Rem filed by the United States against real

property known as 7046 Park Vista Road, Englewood, Ohio with all improvements,

appurtenances and attachments thereon ("1076 Park Vista"). (Doc. #1.) Title owner Brian

Gillingham ("Gillingham") has filed a Verified Claim (doc. #6) and Answer (doc. #7) to the

Complaint.

Now before the Court is a Motion for Summary Judgment filed by the United States.

(Doc. #40.) Gillingham has responded to this Motion[1] and the United States has replied. This

Motion is, therefore, ripe for decision. A brief factual and procedural background will first be set

forth followed by the standard of review for motions for summary judgment and an analysis of

the United States' Motion.

---

[1]Gillingham's Response was submitted by Attorney George Katchmer. Gillingham, who
is currently incarcerated, subsequently filed a request to withdraw this Response which the Court
overruled because the time had run to submit another response and, without the Response
submitted by Attorney Katchmer, Gillingham would be without an opportunity to be heard.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 24, 2003, Claimant Gillingham was indicted in the Montgomery County, Ohio Court of Common Pleas ("Court of Common Pleas") with a violation of Ohio Rev. Code ("O.R.C.") § 2907.05(A)(4), Gross Sexual Imposition. (State of Ohio v. Brian Gillingham, Case No. 02-CR-3025.) On May 13, 2003, a Second Superseding Indictment was filed charging Gillingham with Seventeen Counts.

Counts 1-5 of the Second Superceding Indictment charged Gillingham with Pandering (Possession) of Obscenity Involving a Minor in violation of O.R.C. § 2907.321(A)(5). Counts 6-14 charged Gillingham with Pandering (Distribution) of Obscenity Involving a Minor in violation of O.R.C. § 2907.321(A)(2). Count 15 was dismissed by the State of Ohio prior to trial. Count 16 charged Gillingham with Possession of Criminal Tools in violation of O.R.C. § 2923.24(A). Count 17 charged Gillingham with Gross Sexual Imposition in violation of O.R.C. § 2907.05(A)(4).

On November 3, 2003, Gillingham waived his right to a jury trial and a trial to the bench was conducted beginning on that same day. On June 17, 2004, Gillingham was found guilty of Counts 2, 3 and 4 for Possession of Obscene Material Involving a Minor, Counts 9, 11, 13 and 14 for Dissemination of Obscene Material Involving a Minor, Count 16 for Possession of Criminal Tools and Count 17 for Gross Sexual Imposition. The Court of Common Pleas either dismissed or found Gillingham not guilty of the remaining counts.

On October 27, 2006, the Court of Appeals of Montgomery County dismissed Gillingham's appeal. On August 29, 2007, the Supreme Court of Ohio denied Gillingham's Motion for Leave To Appeal and dismissed his Appeal.

The Court of Appeals of Montgomery County summarized the underlying criminal case

against Gillingham as follows:

> The charges against Gillingham arose from computer images Gillingham transmitted to another man, David Schneider, containing pornographic images of young children. Gillingham told Schneider that he had a spanking fetish. When Englewood Police later searched Gillingham's house, they seized his computer, computer equipment, documents and a videotape portraying Gillingham spanking a naked six year old boy. The boy was at Gillingham's house when the police arrived.
>
> Examination of Gillingham's computer revealed an empty file that formerly contained images Gillingham sent to Schneider. In addition, five images were found on the computer. Douglas Arnold, an employee of the Miami Valley Regional Crime Lab, testified at trial that the images on Gillingham's computer and those he transmitted to Schneider portrayed real children. However, in a trial to the bench, the court made its own findings, independent of Arnold's opinion, that the children portrayed were real children, not virtual images.

The State Exhibits for the Counts on which Gillingham was found guilty were numbered as

follows:

    Count 2 - State's Exhibit 32
    Count 3 - State's Exhibit 33
    Count 4 - State's Exhibit 34
    Count 9 - State's Exhibit 6
    Count 11 - State's Exhibit 8
    Count 13 - State's Exhibit 10
    Count 14 - State's Exhibit 11[2]

In finding Gillingham guilty of Counts 2-4 for Possession of Obscene Material Involving

a Minor, the Court of Common Pleas found that the State has proved beyond a reasonable doubt

that, on or about June 23, 2002, in Montgomery County, Ohio, with knowledge of the character

of the material involved, Gillingham possessed or controlled obscene material that has a minor

as one of its participants. In finding Gillingham guilty of Counts 9, 11, 13 and 14 for

---

[2]These exhibits are filed under seal as exhibits to the United States' Motion for Summary Judgment

Dissemination of Obscene Material Involving a Minor, the Court of Common Pleas found that the State had proved beyond a reasonable doubt that between October 7, 2001, and March 14, 2002, in Montgomery County, Ohio, with knowledge of the character of the material involved, Gillingham disseminated obscene material that has a minor as one of its participants. In finding Gillingham guilty of Count 16 for Possession of Criminal Tools, the Court of Common Pleas found that the State had proved beyond a reasonable doubt that Gillingham possessed and controlled a device and instrument, the computer, with purpose to use it in the commission of the felonies of Pandering Obscenity Involving a Minor as set forth in Counts 1-14 of the Indictment. In finding Gillingham guilty of Count 17 for Gross Sexual Imposition, the Court of Common Pleas found that the State had proved beyond a reasonable doubt that between July 1, 2002, and July 31, 2002, and in Montgomery County, Ohio, Gillingham had sexual contact with another person who was not Gillingham's spouse and was less than thirteen years of age, whether or not Gillingham knew the individual's age.

In reaching the above guilty verdicts, the Court of Common Pleas made the following relevant findings:

1.　　The offenses regarding Counts 1-5 of the indictment occurred on July 23, 2002, the date that a search warrant was executed upon 7046 Park Vista in Englewood, Montgomery County, Ohio.

2.　　The Defendant admitted to Englewood Detective Lang that 7046 Park Vista is his residence.

3.　　State's Exhibits 31-35 are printouts of images that Arnold recovered from the hard drive, State's Exhibit 28B.

4.　　State's Exhibit 32 was examined and the Court found that it is an "image" as well as a "tangible thing capable of arousing interest through sight." It depicts a real minor engaging in the sexual conduct of fellatio. The face is clearly that of a child. It contains a lewd exhibition of male genitals. The

-4-

work depicts the "sexual conduct" of fellatio.

5.  State's Exhibit 33 was examined and the Court found that it depicts a real naked minor engaging in masturbation. This is a prepubescent male. He has no pubic hair. He has smooth, hairless, facial skin. He lacks adult musculature, and he had child-like facial bone structure. The work depicts the lewd exhibition of an erect penis.

6.  State's Exhibit 34 was examined and the Court found that it depicts a real naked minor, bound and gagged, whose penis is being touched by an adult male. This is a prepubescent male. He had no pubic hair. He has smooth, hairless, facial skin. He lacks adult musculature, and he has child-like facial bone structure. The work depicts the lewd exhibition of the child's male genitals between two fingers of the standing naked adult.

7.  The dissemination of the material that is the subject of Counts 9, 11, 13 and 14 originated from Gillingham's residence at 7046 Park Vista in Englewood, Ohio between October 7, 2001 and March 14, 2002.

8.  David Schneider, a person actively engaged in pornography, "chatted" a number of times on the computer via "ICQ software" (hereinafter referred to as Instant Messaging ("IM") with a person who identified himself as "Chris Gillingham."

9.  "Chris Gillingham" is a pseudonym used by Gillingham.

10. During an IM which occurred between October 2001 and January 2002, Gillingham sent to Schneider the file "Realmen.JBC." With the password "spank spank" provided by "Chris," Schneider was able to open the file and observe therein State's Exhibits 3-11.

11. Englewood Officer Eric Totel recovered a computer from the basement of Gillingham's residence. Forensic Examiner Doug Arnold found a "container" named Realmen.JBC. Using the password "spank spank," that opened Schneider's Realmen.JBC file, Arnold was able to open the Realmen.JBC container on Gillingham's hard drive. While there were no images in the container, Arnold did find the file names associated with the images.

12. State's Exhibit 6 was examined and the Court found that it depicts a real naked minor. This is prepubescent female. The work depicts the lewd exhibition of the child's genitals. The completely naked girl is on a chair with her legs spread widely apart, exposing her genitals, between her lacerated thighs.

-5-

13.    State's Exhibit 8 was examined and the Court found that it depicts a real naked minor. This is a prepubescent male. The work depicts the lewd exhibition of the child's genitals as his legs are pulled up over his head in an unnatural position, thereby exposing his scrotum above his beaten buttocks.

14.    State's Exhibit 10 was examined and the Court found it depicts a real naked minor. This is a prepubescent male. The work depicts the lewd exhibition of the child's genitals as the boy is placed in an unnatural upside-down position, thereby exposing his scrotum above his beaten buttocks.

15.    State's Exhibit 11 was examined and the Court found it depicts a real naked minor. This is a prepubescent male with no body hair. The work depicts the lewd exhibition of the child's genitals, as the completely naked boy is placed in an unnatural position on the edge of a bed with his legs pulled apart, exposing his scrotum below his anus and beaten buttocks.

16.    This offense of Gross Sexual Imposition occurred between July 1, 2002 and July 31, 2002, in Montgomery County, Ohio, in 7046 Park Vista in Englewood, Montgomery County Ohio.

17.    A VCR tape, marked State's Exhibit 13 was found in 7046 Park Vista Drive in a chest of drawers in a bedroom. The videotape, State's Exhibit 13, consists of the recording of two spanking incidents.

18.    Two individuals are depicted in the video tape: Johnny and BRIAN GILLINGHAM. Johnny was 7 years old in July 2002.

19.    In the first spanking incident, the videotape then records BRIAN GILLINGHAM removing all of Johnny's clothing thereby causing Johnny to be completely naked. The videotape records GILLINGHAM repeatedly spanking the naked buttocks of Johnny - 10 times with an object and 23 with his bare hand - as Johnny cries. The Defendant then immediately places the clothes back on Johnny, and turns off the camera.

20.    The second spanking incident takes place in a different room. The camera is pointed at the bed. The Defendant leaves the room. He returns several minutes later with Johnny, who is fully clothed. The videotape records the Defendant removing Johnny's pants, so that he is naked from the waist down. The videotape records the Defendant placing Johnny over his lap, and loudly spanking Johnny's naked buttocks seventeen times, as Johnny cries. The Defendant then quickly takes Johnny out of the view of the camera.

-6-

21.    During one phone conversation GILLINGHAM had with Schneider, GILLINGHAM said his sexual fetishes were spanking and abuse.

22.    The Court found beyond a reasonable doubt that GILLINGHAM spanked the naked buttocks of Johnny on two occasions for the specific intent of causing the Defendant's sexual arousal and gratification. The Court found that the Defendant recorded himself spanking Johnny so that the spankings could be viewed in the future.

In addition to the findings of fact of the Court of Common Pleas, the United States submitted Affidavits and other exhibits to its Motion for Summary Judgment. The United States submitted the Affidavits of Michael Lang dated December 12, 2007, ("Lang Aff.") and David Barnes dated December 12, 2007 ("Barnes Aff.") and a Department of the Treasury Report of Investigation dated June 10, 1996.

Part of the contents of the Lang and Barnes Affidavits were challenged by Gillingham in his Response to the Motion for Summary Judgment. The United States then, as exhibits to its Reply, submitted a second affidavit by Michael Lang dated January 24, 2008 ("Lang Aff. 2") and an Affidavit by R. Elizabeth Toepfer dated January 24, 2008 ("Toepfer Aff.").

The following are undisputed facts taken from the exhibits, including the Affidavits, submitted by the United States:

1.    State's Exhibit 10 which forms the basis for Gillingham's Pandering Obscenity conviction was included in the file labeled Realmen.JBC that Gillingham sent over the internet to Schneider. (Lang Aff. ¶¶ 7-9; Lang Aff. 2 ¶ 3.)

2.    During the time period of March 2001 to July 2003, when data was transmitted over AOL from a computer in Ohio, the data was first sent over the wire to the AOL server located in Virginia, and then the data was transmitted from the server in Virginia back to the final recipient, in whatever state the recipient was located. (Barnes Aff. ¶ 16.)

3.    The camera that Gillingham used to video tape himself spanking Johnny was a Sony Model DCR-TRV 730, serial no. 492507. This camera was not

manufactured in Ohio and was manufactured outside of the United States. (Lang Aff. ¶ 3; Lang Aff. 2 ¶ 1; Toepfer Aff. ¶ 2.)

4.   Gillingham's hard drive contained many more images of child pornography than those used in his convictions. (Lang Aff. 2 ¶ 5.) Gillingham received these images over the internet. (Id.)

5.   The tax assessment value of 7046 Park Vista on January 23, 2008, was $140,830. (Lang Aff. 2 ¶ 6.) Gillingham purchased the property in January 2002 for $137,500. (Id.).

6.   On May 19, 1995, Gillingham was indicted for a violation of 18 U.S.C. § 2252(a)(1) based upon his sending approximately 4,000 child pornography images over the internet to an undercover agent in Utah. (Department of the Treasury Report of Investigation dated June 10, 1996.) On June 3, 1996, Gillingham was sentenced to 16 months in prison for violation of 18 U.S.C. § 2252. (Id.)

The analysis next turns to the standard of review for motions for summary judgment.

## STANDARD OF REVIEW

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and the associated caselaw. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an

-8-

element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, §2726. Rather, credibility determinations must be left to the fact-finder. *Id.*

However, the mere existence of a scintilla of evidence in support of the nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be

-9-

evidence on which the jury could reasonably find for the plaintiff." *Id.* The inquiry, then, is whether reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Id.*

Finally, in ruling on a motion for summary judgment, "[a] district court is not …obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. The Rule 56 evidence includes the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed. R. Civ. P. 56(c). The analysis next turns to the United States' Motion for Summary Judgment.

## ANALYSIS OF MOTION FOR SUMMARY JUDGMENT

The United States argues that it is entitled to summary judgment because the real property at 7046 Park Vista is subject to forfeiture under federal law. The United States uses findings of fact from Gillingham's conviction in state court and other evidence to show that Gillingham's actions violated federal law, and to show that violation of that federal law subjects the real property at 7046 Park Vista to forfeiture. Gillingham responds that the forfeiture of 7046 Park Vista is grossly disproportional in relation to the offenses that he committed. He also argues that the United States has not shown the interstate nexus necessary for a violation of federal law.

### Basis of Forfeiture Action

This Court has jurisdiction to entertain the United States' forfeiture request pursuant to

-10-

28 U.S.C. §§ 1345 and 1355. Further, the United States must establish by a preponderance of the evidence that 7046 Park Vista is subject to forfeiture. *United States v. $174,206.00 In U.S. Currency*, 320 F.3d 658, 662 (6th Cir. 2003).

The United States seeks forfeiture pursuant to 18 U.S.C. § 2254(a)(2).[3] Section 2254(a)(2) that was in effect at the time this Complaint was filed provides that real property may be forfeited if it was used or intended to be used to commit or promote the commission of an offense under Chapter 110 involving a visual depiction described in 18 U.S.C. §§ 2251 or 2252.

Thus, 7046 Park Vista can be forfeited if a person used the residence to commit or promote the commission of:

> (1) a violation of 18 U.S.C. § 2251, Sexual Exploitation of Children;
>
> (2) a violation of 18 U.S.C. § 2252(a)(2), Distribution of Child Pornography; or
>
> (3) a violation of 18 U.S.C. § 2252(a)(4)(B), Possession of Child Pornography.

18 U.S.C. § 2254;

In *United States v. Wilk*, No. 04-60216-CR, 2007 WL 2263942 (S.D. Fla. 2007), the Court determined that the nexus between the offense committed and the role that the real property played was sufficient to justify forfeiture of the real property. *Id.* at *1. The Court noted that in excess of 90 child pornography images were retrieved from computers located in the real property. *Id.* Further, "the privacy of the home enabled the Defendant to engage in the illegal

---

[3]This is the applicable statutory language that was in effect at the time the Complaint in this matter was filed. The current statutory language found in 18 U.S.C. § 2254, referring to 18 U.S.C. § 2253, provides that real property may be subject to civil forfeiture for, among other things, if it is used or intended to be used to facilitate a violation of various statutes, including 18 U.S.C. § 2251, Sexual Exploitation of Children, 18 U.S.C. § 2252, Receipt and Distribution of Child Pornography and 18 U.S.C. § 2252(a)(4)(B), Possession of Child Pornography.

child pornography activities without fear of discovery or public scrutiny." *Id.*

In *United States v. Ownby*, 131 F.3d 138, 1997 WL 734040, (4th Cir. 1997), aff'g 926 F. Supp. 558 (W.D. Va. 1996)[4], a panel of the Fourth Circuit found that the Defendant's use of his in-home computer to trade child pornography on the internet subjected the Defendant's house to forfeiture. *Id.* at *1. The court below noted that "the privacy afforded by the dwelling was essential to Ownby's commission of the charged offenses. 926 F. Supp. at 566. "Indeed, the record indicates that Ownby placed the computer in his home, in part, to avoid the watchful eyes of co-workers." *Id.*

Having established that real property is subject to forfeiture for certain specified violations of federal law, the United States next presents evidence that Gillingham violated those federal laws. Each alleged violation will be addressed seriatim.

## Sexual Exploitation of Children

Title 18 U.S.C. § 2251 provides:

(a) Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in,… any sexually explicit conduct for the purposes of producing any visual depiction of such conduct, shall be punished as provided under subsection (e), … if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means….

The definition of sexually explicit conduct includes lascivious exhibition of the genitals or pubic area of any person. 18 U.S.C. § 2256. The definition of child pornography includes any visual depiction, including any photograph, film, video, picture or computer or computer-generated image or picture of sexually explicit conduct where the production of such visual depiction

---

[4]*Ownby* was reviewing a criminal forfeiture but the requirements for a civil forfeiture are essentially the same.

involves the use of a minor engaging in sexually explicit conduct. Id.

To establish an interstate nexus, the United States need not prove that Gillingham intended to place the pornography into the stream of interstate commerce. *United States v. Gann*, No. 04-5840, 2005 WL 3528917 at ** 6 (6th Cir. Dec. 21, 2005), *cert. denied*, 127 S. Ct. 185 (2006). Evidence that the materials used to make the child pornography were made out of state is sufficient. *United States v. Chambers*, 441 F.3d 438, 452 (6th Cir. 2006).

In this case, the United States uses findings of fact from the Court of Common Pleas to prove most of the elements of its Sexual-Exploitation-of-Children claim. To establish forfeitability of property, the United States may rely upon a claimant's conviction of a criminal conviction in another court. *United States v. Approximately $25,829,681.80 In Funds*, No. 98 CIV.2682 LMM, 2002 WL 31159116 at * 3-5 (S.D.N.Y. Sept. 27, 2002). Said another way by Gillingham, issues determined by a State court are deemed decided on principles of issue preclusion. Of course, a State court decision may not prove all of the elements necessary for a federal crime, to wit the interstate nexus requirement.

Based upon the findings of the Court of Common Pleas, Gillingham made a VCR tape of himself and a minor under eighteen years of age. The videotape records two spanking incidents. In the first, Gillingham removed all of the minor's clothing and repeatedly spanked the minor's naked buttocks 10 times with an object and 23 times with his bare hands. Gillingham then immediately placed the clothes back on the minor. In the second spanking incident, Gillingham is first seen setting up the camera. He then leaves the room and returns with a fully-clothed minor. The videotape records Gillingham removing the minor's pants so that he is naked from the waist down. Gillingham then placed the minor over his lap and loudly spanked the minor's

naked buttocks seventeen times.

The Court of Common Pleas also found that, during one phone conversation that Gillingham had with Schneider, Gillingham said his sexual fetishes were spanking and abuse. As a result, the Court of Common Pleas found that Gillingham spanked the minor's naked buttocks on two occasions for the specific intent of causing Gillingham's sexual arousal and gratification. The court also found that Gillingham recorded himself spanking the minor so that the spankings could be viewed in the future.

The videotape that Gillingham made of himself spanking the minor was produced using a Sony, Model DCR-TRV730 camera, serial no. 492507. This Sony camera is not made in Ohio and, thus, had been mailed, shipped or transported in interstate or foreign commerce in order to reach Gillingham's residence at 7046 Park Vista.

Therefore, the United States has identified evidence that Gillingham violated 18 U.S.C. § 2251. Gillingham employed, used, persuaded, induced, enticed or coerced a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. Further, the visual depiction, a videotape in this case, was made using a video camera that had been mailed, shipped or transported in interstate or foreign commerce. Gillingham has presented no evidence to the contrary.

### **Distribution of Child Pornography**

Title 18 U.S.C. § 2252(a)(2) provides:

> (a) Any person who (2) knowingly receives, or distributes, any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution in interstate or foreign commerce or through the mails, if (A) the producing of such visual depiction involves the

use of a minor engaging in sexually explicit conduct; and (B) such visual depiction is of such conduct… shall be punished as provided in subsection (b) of this section.

Further, the transmission of child pornography over the internet satisfies the "interstate commerce" element of transporting child pornography through interstate commerce. *United States v. Runyan*, 290 F.3d 223, 239 (5th Cir. 2002).

Based upon the findings of the Court of Common Pleas, Gillingham "chatted" on the computer via IM a number of times with David Schneider, a person actively engaged in pornography. During an IM chat which occurred between October 2001 and January 2002, Gillingham sent Schneider the computer filed termed "Realmen.JBC." With the password "spank spank" provided by Gillingham, Schneider was able to open "Realmen.JBC" and observe therein several images. A "container" named "Realmen.JBC" which opened with the password "spank spank" was found on Gillingham's computer.

State's Exhibits 3-11 are printouts of the images in the "Realmen.JBC" file. The Court of Common Pleas specifically found that Exhibits 6, 8, 10 and 11 each contained images of real minors engaging in lewd exhibitions of sexually explicit conduct.

Therefore, the United States has presented evidence that Gillingham violated 18 U.S.C. § 2252(a)(2). There is evidence that Gillingham knowingly distributed a visual depiction involving the use of a minor engaged in sexually explicit conduct in interstate commerce. Further, Gillingham has presented no evidence to the contrary.

### Possession of Child Pornography

Title 18 U.S.C. § 2252(a)(4)(B) provides:

(a) Any person who (4)(B) knowingly possesses 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any

visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means, including by computer, if (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct; shall be punished as provided in subsection (b) of this section.

Based upon the findings of the Court of Common Pleas, Gillingham possessed State's Exhibits 32, 33 and 34 on his computer. The court also found that Exhibits 32, 33 and 34 were images of a minor engaged in sexually explicit conduct.

Further, there is evidence that Gillingham used the Internet and email to transport child pornography. As shown by his June 3, 1996 conviction, Gillingham transported approximately 4,000 child pornography images over the internet to an undercover agent in Utah. Gillingham also transmitted the "Realmen.JBC" file, which contained child pornography, to Schneider over the Internet sometime between October 2001 and January 2002. Thus, there is evidence that Gillingham was familiar with and used the Internet to obtain and transmit child pornography.

Therefore, the United States has presented evidence that Gillingham violated 18 U.S.C. § 2252(a)(4)(B). The United States has presented evidence that Gillingham knowingly possessed images on his computer of a minor engaged in sexually explicit conduct. The United States has also presented evidence that these images were transmitted using a computer over the Internet and thus were in interstate or foreign commerce. Gillingham has presented no evidence to the contrary.

## **Forfeiture**

The United States has presented undisputed evidence that Gillingham violated 18 U.S.C. §§ 2251(a), 2252(a)(2) and 2252(a)(4)(B). To be forfeitable, the real property at 7046 Park Vista must have been used or intended to be used in the commission of these violations. 18 U.S.C. §

-16-

2253(a)(3) as applied to this civil case pursuant to 18 U.S.C. § 2254.

The United States has presented evidence that 7046 Park Vista was Gillingham's residence. The United States has also presented evidence that the violations of 18 U.S.C. §§ 2251(a), 2252(a)(2) and 2252(a)(4)(B) occurred in 7046 Park Vista. Gillingham has presented no evidence to the contrary. Therefore, 7046 Park Vista is real property subject to forfeiture. See *Ownby*, 1997 WL 734040 at * 1; *Wilk*, 2007 WL 2263942 at * 1; United *States v. 1181 Waldorf Drive, St. Louis, Missouri*, 900 F. Supp. 1167, 1171 (E.D. Mo. 1995).

Having determined that 7046 Park Vista is forfeitable, the final step in the analysis is to determine if the forfeiture of 7046 Park Vista violates the "excessive fines" clause of the Eighth Amendment to the Constitution of the United States. *United States v. Young*, No. 5:96-CR-2(DF), 2001 WL 1644658 at * 1 (M.D. Ga. Dec. 21, 2001), *aff'd*, 221 F.3d 1355 (11th Cir. 2000), *reh'g denied*, 234 F.3d 35 (11th Cir. 2000), *cert. denied*, 531 U.S. 1148 (2001). Further, the burden of proof in establishing that the forfeiture of 7046 Park Vista is an excessive fine lies with Gillingham. *Wilk*, 2007 WL 2263942 at * 1. Finally, in determining whether a forfeiture is an excessive fine, the court is to consider the following factors: the seriousness of the offense, including the moral gravity of the crime measured in terms of the magnitude and nature of its harmful reach against the severity of the sanction; the extent of the criminal activity associated with the property; whether the property was a residence; the effect of the forfeiture on innocent occupants, including children; and a comparison of the proposed civil forfeiture with the sentences imposed for commission of the underlying criminal conduct. *1181 Waldorf Drive*, 900 F. Supp. at 1173.

Gillingham presents legal argument but no evidence regarding whether the forfeiture of

7046 would be an excessive fine. The United States first argues that Gillingham may not raise the Eighth Amendment Excessive Fines Clause as a bar to forfeiture because he failed to plead it as a defense.

Rule 8 of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeitures provide that "a claimant may seek to mitigate a forfeiture under the Excessive Fines Clause of the Eighth Amendment by motion for summary judgment or by motion made after entry of a forfeiture judgment if (1) the Claimant has pleaded the defense under Rule 8; and (2) the parties have had the opportunity to conduct civil discovery on the defense." In this case, Gillingham has not plead the defense under Rule 8 in any of his pleadings.

Therefore, Gillingham is forbidden from now raising the Excessive Fines Clause as a defense. However, assuming that Gillingham could raise the Excessive Fines Clause as a defense, forfeiture of 7046 Park Vista would not be an excessive fine.

First, crimes involving child pornography are extremely serious. Gillingham used his residence at 7046 Park Vista to both transmit and receive child pornography and to produce child pornography. Finally, this Court has been unable to find and Gillingham has not identified any case involving child pornography where the forfeiture of a residence was considered an excessive fine.

Second, all of the offenses occurred at 7046 Park Vista. The privacy of Gillingham's residence at 7046 Park Vista was crucial and necessary to Gillingham's commission of the crimes without being detected.

Third, Gillingham does not claim that forfeiture would have any adverse impact on any innocent occupants of the house. While the Court of Common Pleas found that Gillingham

-18-

informed Lang during the execution of the search warrant on July 23, 2002, that his grandmother, mother, his mother and his girlfriend and her children resided with him at 7046 Park Vista, he presents no evidence regarding who might now reside at 7046 Park Vista. Finally, Gillingham is incarcerated, and, according to the United States, Gillingham has no children.

Fourth, if the value of the property to be forfeited is within the range of fines authorized by Congress and the Sentencing Guidelines, a strong presumption arises that forfeiture is constitutional. *Wilks*, 2007 WL 2263942 at * 1. Here, the maximum statutory fine for possession of child pornography, one of the offenses committed by Gillingham, is $250,000 and the guideline range is $15,000 to $150,000. *Id.* Gillingham's residence at 7046 Park Vista is valued on the property tax records at $140,830. Therefore, in this case, a comparison of the proposed civil forfeiture with the sentences imposed for commission of the underlying criminal conduct results in the conclusion that civil forfeiture of 7046 Park Vista is presumptively reasonable.

The presumptive reasonableness of the forfeiture of 7046 Park Vista is not overcome by an evaluation of the other factors. In sum, based upon an evaluation of the applicable standards, forfeiture of 7046 Park Vista is not an excessive fine against Gillingham for the federal violations that he committed.

### **Gillingham's Arguments**

Gillingham presents two arguments against forfeiture. He first argues that the United States cannot show the interstate nexus requirements of any of the three federal claims which the United States claims he violated. The basis for this argument is the use by the United States of hearsay statements in the Lang and Barnes Affidavits. However, this Court has not used the alleged hearsay statements to reach the conclusion that Gillingham violated three separate

-19-

federal provisions.

Gillingham's second argument is that forfeiture of 7046 Park Vista is violative of the Excessive Fines Clause of the Eighth Amendment. However, as determined above, it is not.

## CONCLUSION

The United States has presented unrefuted evidence that Gillingham violated 18 U.S.C. §§ 2251(a), Sexual Exploitation of Children, 2252(a)(2), Distribution of Child Pornography, and 2252(a)(4)(B), Possession of Child Pornography. Further, the law permits civil forfeiture of the real property at 7046 Park Vista, Gillingham's residence, and forfeiture of 7046 Park Vista does not offend the Excessive Fines Clause of the Eighth Amendment.

Therefore, there are no genuine issues of material fact and the United States is entitled to judgment as matter of law on its civil forfeiture claim. The United States' Motion for Summary Judgment (doc. #40) is GRANTED. The United States is given until not later than thirty (30) days following entry of this Order to submit a proposed Decree of Forfeiture.

DONE and **ORDERED** in Dayton, Ohio, this Twentieth day of February, 2008.

**s/Thomas M. Rose**

_____
THOMAS M. ROSE
UNITED STATED DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Brian Gillingham at his last know address

-20-